**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| THE DEKALB COUNTY SCHOOL DISTRICT and DR. EUGENE WALKER, Individually and in his Official Capacity as a Member and Chairman of the DeKalb County Board of Education, | : : : : : : : : | |
| | : | CIVIL ACTION NO. |
| | : | 1:13-CV-544-RWS |
| Plaintiffs, | : | |
| v. | : : : | |
| THE GEORGIA STATE BOARD OF EDUCATION and NATHAN DEAL, in his Official Capacity as Governor of the State of Georgia, | : : : : | |
| Defendants. | : : : | |

**<u>ORDER</u>**

This case is before the Court for consideration of Plaintiffs' Amended Motion for a Preliminary Injunction [9] enjoining the Governor of the State of Georgia from suspending members of the DeKalb County Board of Education. After considering the submissions of the parties, as well as evidence and arguments presented at the March 1, 2013 hearing, the Court enters the following Order.

**BACKGROUND**

After being placed on "Accredited Probation" by the Southern Association of Colleges and Schools Council on Accreditation and School Improvement ("SACS"), members of the DeKalb County Board of Education ("DCBOE") were given notice to present evidence before the State Board of Education ("SBOE") why the SBOE should not recommend that Governor Nathan Deal (the "Governor") suspend the members of the DCBOE. The hearing was scheduled pursuant to O.C.G.A. § 20-2-73 (the "School Board Suspension Statute" or the "Statute"). Prior to the SBOE hearing scheduled for February 21, 2013, the DeKalb County School District (the "School District") and Dr. Eugene Walker, individually and in his official capacity as a member and chairman of the DCBOE ("Dr. Walker"), sought a temporary restraining order enjoining the SBOE hearing. On February 20, 2013, the Court issued an Order [4] denying the request for a temporary restraining order.

A hearing was conducted by the SBOE on February 21, 2013, and the SBOE recommended that the Governor suspend 6 of the 9 members of the DCBOE.[1] Following that decision, Plaintiffs filed an Emergency Motion for

---

[1] At the commencement of the hearing, the SBOE announced that the 3 newly elected members of the DCBOE would not be considered for recommendation of suspension.

2

Temporary Restraining Order [6] seeking to enjoin the Governor from suspending the 6 members as recommended by the SBOE and from appointing replacements for those members. The Court issued an Order [8] on February 22, 2013, that denied Plaintiffs' request to enjoin the Governor from acting to suspend members of the DCBOE and name new appointments to fill those positions. However, implementation of those decisions was enjoined. Specifically, if the Governor decided to suspend the members, those members would remain in office, but would not be permitted to take any official actions. Likewise, if new members were named, those new members would be enjoined from actually taking office. The stated purpose of the Order was to maintain the status quo until the Court could conduct a hearing on Plaintiffs' motions for injunctive relief.

On February 25, 2013, the Governor issued an Executive Order suspending the 6 members of the DCBOE as recommended by the SBOE. The Governor has not yet named persons to fill the vacancies created by those suspensions.

The Court held a hearing to consider Plaintiffs' Amended Motion for Preliminary Injunction on March 1, 2013, and received evidence and heard arguments from counsel. Plaintiffs' Motion is now ripe for consideration.

## DISCUSSION

It is settled law in this Circuit that a preliminary injunction is an

"extraordinary and drastic remedy."  Zardui-Quintana v. Richard, 768 F.2d

1213, 1216 (11th Cir. 1985).  To obtain such relief, a movant must demonstrate:

> (1) a substantial likelihood of success on the merits of the
> underlying case, (2) . . . irreparable harm in the absence of an
> injunction, (3) the harm suffered by the movant in the absence
> of an injunction would exceed the harm suffered by the
> opposing party if the injunction issued, and (4) an
> injunction would not disserve the public interest.

Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242,

1246-47 (11th Cir. 2002).

There are four claims to which these standards must be applied.  The

School District challenges the School Board Suspension Statute as violative of

the Fourteenth Amendment to the United States Constitution and the Georgia

Constitution.  Dr. Walker makes these same challenges to the Statute.  As stated

below, the Court finds that neither Plaintiff has shown a substantial likelihood

of success on the merits of the Fourteenth Amendment claim.  Because this

conclusion is reached for different reasons as to each, their claims will be

addressed separately.  As to the claims under the Georgia Constitution, the

Court finds the issues raised by the parties should be certified to the Georgia

Supreme Court, and thus, addresses the claims of the parties together.  Finally, because the legal issues associated with the State law claims are so unsettled, the Court addresses, in the final section of the Order, the other factors which convince the Court that the issuance of a preliminary injunction is not appropriate.

## A. Fourteenth Amendment Claim

### 1. DeKalb County School District

Defendants have raised the question of whether the School District has standing to challenge the constitutionality of a state statute.  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.  This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.  In both dimensions it is founded on concern about the proper–and properly limited–role of the courts in a democratic society."  Warth v. Seldin, 422 U.S. 490, 498 (1975).

The School District is a political subdivision of the State of Georgia.  Greene Cnty. School Dist. v. Circle Y Const., Inc., 728 S.E.2d 184, 185 n.2 (Ga. 2012); Coffee Cnty. Sch. Dist. v. Snipes, 454 S.E.2d 149, 150 (Ga. Ct. App. 1995).  "Political subdivisions of a state may not challenge the validity of

a state statute under the Fourteenth Amendment." <u>N.Y.C. v. Richardson</u>, 473

F.2d 923, 929 (2d Cir. 1973); <u>see also</u> <u>Williams v. Mayor and City Council of</u>

<u>Baltimore</u>, 289 U.S. 36, 40 (1933) ("A municipal corporation, created by a state

for the better ordering of government, has no privileges or immunities under the

Federal Constitution which it may invoke in opposition to the will of its

creator."). Thus, as a political subdivision of the State of Georgia, it appears the

School District may lack standing.

Defendants also assert that the School District has suffered no injury in

fact. To satisfy standing, a plaintiff must demonstrate "injury in fact, causation,

and redressability." <u>Lance v. Coffman</u>, 549 U.S. 437, 439 (2007). A plaintiff

"raising only a generally available grievance about government . . . and seeking

relief that no more directly and tangibly benefits him that it does the public at

large" lacks standing. <u>Id.</u> Thus, Defendants contend that the School District

lacks standing on this ground as well.

Without deciding the standing issue at this time, the Court concludes that

the issue nonetheless creates a substantial question about whether the School

District will ultimately succeed on its Fourteenth Amendment claim.

Moreover, when the substance of the School District's claim is

considered, it has questionable merit. "An essential principle of due process is

6

that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985).  Thus, one of the first inquiries a court must make is whether plaintiffs "have asserted interests within the Fourteenth Amendment's protection of 'liberty' and 'property.'" <u>Smith v. Org. of Foster Families for Equality and Reform</u>, 431 U.S. 816, 838-39 (1977). Plaintiffs' submissions identify the property right of elected officials in their office as an interest that cannot be denied without due process of law. However, they fail to identify any property interest of the School District that is threatened by the state's action.

The School District has no interest in any particular person serving on the school board.  Rather, the interest of the School District is that a duly constituted board be in place so that it can conduct business.  The School Board Suspension Statute assures continuity of operations through appointments by the Governor to fill vacancies created by the suspensions.  Thus, the loss of any property interest by the School District is not apparent to the Court.  In the absence of a showing of loss of a property interest, the School District would lack a key element in its Fourteenth Amendment claim.

AO 72A
(Rev.8/82)

Based on the foregoing, the Court concludes that the School District has failed to show a substantial likelihood of success on the merits of its Fourteenth Amendment claim.

### 2. Dr. Eugene Walker

Unlike the School District, Dr. Walker appears to have a property interest that is subject to the protections of the Fourteenth Amendment and standing to assert his claim.  See Bd. of Educ. v. Allen, 392 U.S. 236, 241 n.5 (1968); Finch v. Miss. State Med. Ass'n, Inc., 585 F.2d 765, 773 (5th Cir. 1978).  Assuming that Dr. Walker has a property interest at stake, the question is what process he is due.  The focus of Dr. Walker's challenge has been on the initial stages of the suspension proceedings; i.e., the SACS report and the hearing before the SBOE. In Cleveland Bd. of Educ. v. Loudermill, the Supreme Court outlined the pre-termination process a public employee should receive.  The Court held:

> An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.  We have described "the root requirement" of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.  This principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected interest in his employment. . . .

8

. . . .

[T]he pretermination hearing, though necessary, need not
be elaborate.  We have pointed out that the formality and
procedural requisites for the hearing can vary, depending
upon the importance of the interests involved and the
nature of the subsequent proceedings.  In general,
something less than a full evidentiary hearing is
sufficient prior to adverse administrative action.  Under
state law, respondents were later entitled to a full
administrative hearing and judicial review.  The only
question is what steps were required before the
termination took effect.

. . . [T]he pretermination hearing need not definitively
resolve the propriety of the discharge.  It should be
an initial check against mistaken decisions–essentially,
a determination of whether there are reasonable
grounds to believe that the charges against the
employee are true and support the proposed action.

. . . The tenured public employee is entitled to oral or
written notice of the charges against him, an
explanation of the employer's evidence, and an
opportunity to present his side of the story. . . .

Cleveland Bd. of Educ., 470 U.S. at 542-546 (internal citations and quotations

omitted) (emphasis in original).[2]  The holding rests, in part, on the fact that state

law afforded a full post-termination hearing to employees.  Id. at 546.  The

_____

[2] Plaintiffs rely on Goldberg v. Kelly, 397 U.S. 254 (1970), in support of
their argument that the hearing before the SBOE was inadequate.  However, in
Cleveland Bd. of Educ., the Court noted that "as the Goldberg Court itself
pointed out, that case presented significantly different considerations than are
present in the context of public employment."  470 U.S. at 545.

9

Court also noted that suspending an employee with pay ameliorated some of the due process concerns.  Id. at 544-45.  Regarding the timing of a post-termination hearing, the Court acknowledged that the Due Process Clause requires a hearing "at a meaningful time," but noted that a "9-month adjudication is not, of course, unconstitutionally lengthy *per se*."  Id. at 547.

In the present case, the Board Members received notice of the hearing before the SBOE.  The SACS report provided the claims against the members. Plaintiffs challenge the sufficiency of this notice for not stating a standard against which they would be measured.  In Arnett v. Kennedy, 416 U.S. 134, 158 (1974), the Court considered a challenge to the standard of "such cause as will promote the efficiency of the service" by discharged employees of the Office of Economic Opportunity.  Quoting its decision in Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, 413 U.S. 548, 578-79 (1973), the Court stated:

> [T]here are limitations in the English language with respect
> to being both specific and manageably brief, and it seems to
> us that although the prohibitions may not satisfy those
> intent on finding fault at any cost, they are set out in terms
> that the ordinary person exercising ordinary common
> sense can sufficiently understand and comply with,
> without sacrificing to the public interest.

Arnett, 416 U.S. at 159.

The Court finds that the SACS report provided the Board Members adequate notice.  The report contains specific allegations of conduct that violate applicable standards and policies.  Though more specificity could have been provided, an "ordinary person exercising ordinary common sense can sufficiently understand" the allegations.  The Court further finds that the hearing before the SBOE met the basic requirements of pre-termination due process.  Moreover, the Statute provides additional process before a termination can take place.  If a Member petitions for reinstatement, subsection (c) provides for another hearing (conducted in compliance with the Georgia Administrative Procedure Act) and judicial review.  Thus, there is considerable evidence that due process as required by the Fourteenth Amendment has been satisfied.

Based on the foregoing, the Court finds that Dr. Walker has failed to show a substantial likelihood of success on his Fourteenth Amendment claim.

**B. State Law Claims**

Plaintiffs assert that the School Board Suspension Statute violates the Georgia Constitution.  Specifically, Plaintiffs contend that the Statute's procedures for removal of elected local school board members violate Article VIII, Section V, Paragraph I, which grants authority to local boards of education to establish and maintain public schools.  Plaintiffs also contend that

11

appointment by the Governor of replacement members of the board would

violate the requirement of Article VII, Section V, Paragraph II that local boards

be elected.

Plaintiffs assert that a review of the Article VIII provisions creating

educational offices supports their position that, as elected officials, members of

local boards of education must be treated differently for removal purposes.

Members of the SBOE and Board of Regents are appointed by the Governor

and confirmed by the Senate.  For these boards, the Constitution specifically

authorizes the General Assembly to provide for the removal from office of the

members.  Ga. Const. of 1983, Art. VIII, § II, ¶ I(d) and Art. VIII, § IV, ¶ I(f).

For the State School Superintendent and the local boards of education, who are

elected, the Constitution does not include removal among the powers granted to

the General Assembly.

Finally, Plaintiffs assert that the School Board Suspension Statute does

not create an additional "qualification" as contemplated by Article VIII, Section

V, Paragraph II of the Constitution (requiring local board members to have

"additional qualifications as may be required by law").

The School Board Suspension Statute was passed by the General

Assembly in 2010.  The Georgia Supreme Court has not addressed any of the

issues raised by Plaintiffs.  A decision on these issues could have a significant impact on the public education system in Georgia.  In cases such as this, comity requires "a proper respect for state functions, a recognition that the entire country is made up of a Union of separate state governments, and a continuance in the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." Younger v. Harris, 401 U.S. 37, 44 (1971).  In this case, the Court finds that comity requires that the state law issues raised by Plaintiffs be decided by the courts of the State of Georgia.

Having reached this conclusion, the Court is faced with two alternative means of obtaining that result.  The Court may simply abstain from deciding the issue and leave it to Plaintiffs to pursue their claims in the State judicial system. Alternatively, the Court can certify the issues to the Georgia Supreme Court for decision.  See O.C.G.A. § 15-2-9(a) (authorizing a district court to certify questions of state law to the Georgia Supreme Court where "there are involved in any proceeding before it questions of the laws of this state which are determinative of the case and there are no clear controlling precedents in the decisions of the Supreme Court of this state").

The more expeditious manner for addressing the issues is through certification.  Rather than having to wait on a newly-filed state action to work its way through to appeal, this Court can promptly certify questions to the Supreme Court.  Believing that time is of the essence, the Court chooses to proceed by certifying questions to the Georgia Supreme Court.  This approach will assure that a State court decides these issues that are so directly related to state institutions and state functions and will further assure that a decision is made as expeditiously as possible.

Therefore, the parties are directed to confer in an effort to agree upon certified questions for submission to the Georgia Supreme Court.  If the parties are unable to agree within 10 days of the entry of this Order, each party shall submit proposed certified questions to the Court.

## C. Injunctive Relief

Neither Plaintiff has satisfied the requirements for a preliminary injunction based on the Fourteenth Amendment claims.  The question of injunctive relief on the state claims is a closer question.  Until the Georgia Supreme Court rules on the certified questions, the likelihood of success on the merits of Plaintiffs' state law claims is uncertain.  While Plaintiffs make persuasive arguments challenging the School Board Suspension Statute, the

14

suggestion in <u>Roberts v. Deal</u>, 723 S.E.2d 901, 903 (Ga. 2012) that the General Assembly is "presumably" authorized "to establish a mechanism for the administrative removal of board members" weighs against their position.

Assuming Plaintiffs could show a substantial likelihood of success on the merits, the Court finds that consideration of the harms at stake does not favor issuance of a preliminary injunction.  At this time, the harm to Plaintiffs is their temporary inability to perform the duties of the office to which they were elected.  Because they are presently suspended with pay, they are suffering no monetary loss.  Of course, if they are permanently removed as authorized by the Statute, they will suffer the loss of their positions and the compensation therefor.  The latter consequences can only occur after they have been afforded the process provided by the Statute.

In the event Plaintiffs ultimately prevail in the case, they will be re-instated to their positions and will receive compensation to which they are entitled.  Thus, if they ultimately prevail, they will have only suffered the loss of the opportunity to serve in their elected office for a limited period of time.

The most significant competing interest to that of Plaintiffs is the interest of the public.  Though the public has an interest in its elected officials being allowed to serve in the offices to which they were elected, there is an even

greater public interest at stake here.  The interest of the public in a healthy

public school system outweighs the interests of board members in serving in

their positions.  Though Plaintiffs have refuted some SACS' allegations which

served as part of the basis for the recommendation of the SBOE that they be

suspended, there was sufficient evidence to convince SACS and the SBOE that

actions of the Board were in violation of applicable standards and policies.

In fact, the violations were so egregious that the School District was

placed on "Accredited Probation," the level of accreditation immediately

preceding loss of accreditation.  The harm from the loss of accreditation to the

School District and the resulting harm to the students in the district are

profound.  To permit the Board Members to continue to serve while their

individual claims are resolved risks substantial consequences for the School

District and its students.  The Court finds that this risk of harm far outweighs

the risks to the Board Members.  Should Plaintiffs prevail, the Board Members

can more nearly be made whole than can the students if the return of the

members results in loss of accreditation.

Based on the foregoing, the Court concludes that continued injunctive

relief is not appropriate.  Plaintiffs' Amended Motion for Preliminary

AO 72A
(Rev.8/82)

Injunction [9] is **DENIED**, and the Restraining Order [8] previously entered is **VACATED**.

## CONCLUSION

Plaintiffs' Amended Motion for a Preliminary Injunction [9] is **DENIED**. The Temporary Restraining Order [8] previously issued by the Court is hereby **VACATED**.  Having decided that issues raised in Plaintiffs' state law claims should be certified to the Supreme Court of Georgia, the Court **DIRECTS the Parties** to confer in an effort to agree upon certified questions for submission to the Supreme Court of Georgia.  If the parties are unable to agree within 10 days of the entry of this Order, each party shall submit proposed certified questions to the Court.

**SO ORDERED**, this <u>4th</u> day of March, 2013.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)