# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| THE DEKALB COUNTY SCHOOL DISTRICT and DR. EUGENE WALKER, Individually and in his Official Capacity as a Member and Chairman of the DeKalb County Board of Education, | : : : : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 1:13-CV-544-RWS |
| v. | : : | |
| THE GEORGIA STATE BOARD OF EDUCATION and NATHAN DEAL, in his Official Capacity as Governor of the State of Georgia, | : : : : : | |
| Defendants. | : | |

## ORDER

CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, PURSUANT TO ARTICLE VI, SECTION VI, PARAGRAPH IV OF THE GEORGIA CONSTITUTION, TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES.

It appears to the Court that this case involves questions of Georgia law that are determinative of the case, but unanswered by controlling precedent of the Supreme Court of Georgia or any other Georgia court. The Court therefore

certifies the questions for resolution by the highest court of Georgia. *See* O.C.G.A. § 15-2-9; Ga. Sup. Ct. R. 46.

## BACKGROUND

After being placed on "Accredited Probation" by the Southern Association of Colleges and Schools Council on Accreditation and School Improvement ("SACS"), members of the DeKalb County Board of Education ("DCBOE") were given notice to present evidence before the State Board of Education ("SBOE") why the SBOE should not recommend that Governor Nathan Deal (the "Governor") suspend the members of the DCBOE. The hearing was scheduled pursuant to O.C.G.A. § 20-2-73 (the "School Board Suspension Statute" or the "Statute").

A hearing was conducted by the SBOE on February 21, 2013, and the SBOE recommended that the Governor suspend 6 of the 9 members of the DCBOE.[1] Following that decision, Plaintiffs filed an Emergency Motion for Temporary Restraining Order [6] seeking to enjoin the Governor from suspending the 6 members as recommended by the SBOE and from appointing replacements for those members. The Court issued an Order [8] on February 22, 2013, that denied Plaintiffs' request to enjoin the Governor from acting to suspend members of the

---

[1]At the commencement of the hearing, the SBOE announced that the 3 newly elected members of the DCBOE would not be considered for recommendation of suspension.

DCBOE and name new appointments to fill those positions. However, implementation of those decisions was enjoined. Specifically, if the Governor decided to suspend the members, those members would remain in office, but would not be permitted to take any official actions. Likewise, if new members were named, those new members would be enjoined from actually taking office. The stated purpose of the Order was to maintain the status quo until the Court could conduct a hearing on Plaintiffs' motions for injunctive relief.

On February 25, 2013, the Governor issued an Executive Order suspending the 6 members of the DCBOE as recommended by the SBOE. The Court held a hearing to consider Plaintiffs' Amended Motion for Preliminary Injunction on March 1, 2013, and received evidence and heard arguments from counsel. For the reasons stated below, the Court denied Plaintiffs' motion and vacated the earlier temporary restraining order. On March 16, 2013, Governor Deal named 6 new members of the DCBOE, and those new members have taken office.

## DISCUSSION

In order to obtain a preliminary injunction, a movant must demonstrate:

(1) a substantial likelihood of success on the merits of the underlying case, (2) . . . irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir. 2002). Each of the Plaintiffs seeks injunctive relief based on challenges to the School Board Suspension Statute as violative of the Fourteenth Amendment to the United States Constitution and the Georgia Constitution.

In an Order [16] issued March 4, 2013, the Court concluded that Plaintiffs failed to demonstrate a substantial likelihood of success on their Fourteenth Amendment claim. The Court found there are significant questions regarding the standing of the DeKalb School District (the "School District") to challenge the constitutionality of a state statute. Also, Plaintiffs failed to identify any property interest of the School District that is threatened by state action, which is a key element of a Fourteenth Amendment claim.

While the Court found that Dr. Eugene Walker ("Dr. Walker") appears to have a property interest that is subject to the protections of the Fourteenth Amendment and standing to assert his claim, the Court concluded that the Statute affords Dr. Walker the process that he is due under the Fourteenth Amendment. Dr. Walker's challenge focused on the initial stages of the suspension proceedings; i.e., the SACS report and the hearing before the SBOE. The Court concluded that the process satisfied the pre-termination process required under Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-546 (1985). Moreover, the Court noted that the Statute provides additional process before a termination can take place. If

a Member petitions for reinstatement, subsection (c) of the Statute provides for another hearing (conducted in compliance with the Georgia Administrative Procedure Act) and judicial review.  Thus, there is considerable evidence that due process as required by the Fourteenth Amendment has been satisfied.

Plaintiffs also assert that the School Board Suspension Statute violates the Georgia Constitution.  Specifically, Plaintiffs contend that the Statute's procedures for removal of elected local school board members violate Article VIII, Section V, Paragraph I, which grants authority to local boards of education to establish and maintain public schools.  Plaintiffs also contend that appointment by the Governor of replacement members of the board violates the requirement of Article VIII, Section V, Paragraph II that local boards be elected.

Plaintiffs assert that a review of the Article VIII provisions creating educational offices supports their position that, as elected officials, members of local boards of education must be treated differently for removal purposes. Members of the SBOE and Board of Regents are appointed by the Governor and confirmed by the Senate.  For these boards, the Constitution specifically authorizes the General Assembly to provide for the removal from office of the members.  Ga. Const. of 1983, Art. VIII, § II, ¶ I(d) and Art. VIII, § IV, ¶ I(f).  For the State School Superintendent and the local boards of education, who are elected, the

Constitution does not include removal among the powers granted to the General Assembly.

Finally, Plaintiffs assert that the School Board Suspension Statute does not create an additional "qualification" as contemplated by Article VIII, Section V, Paragraph II of the Constitution (requiring local board members to have "additional qualifications as may be required by law").

The School Board Suspension Statute was passed by the General Assembly in 2010. The Georgia Supreme Court has not addressed any of the issues raised by Plaintiffs. Based on the Court's conclusions regarding Plaintiffs' Fourteenth Amendment claims, a decision on the state law issues will be determinative of the case. A decision on these issues will have a significant impact on the public education system in Georgia. In cases such as this, comity requires "a proper respect for state functions, a recognition that the entire country is made up of a Union of separate state governments, and a continuance in the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." Younger v. Harris, 401 U.S. 37, 44 (1971). In this case, the Court finds that comity requires that the state law issues raised by Plaintiffs be decided by the courts of the State of Georgia.

Having reached this conclusion, the Court directed the parties to confer in an effort to agree upon certified questions for submission to the Georgia Supreme

Court.  The parties have submitted proposed certified questions [18] to the Court. Having reviewed the proposed questions, the Court approves the same and certifies the following questions for resolution by the Georgia Supreme Court:

DOES O.C.G.A. § 20-2-73, OR ANY PORTION THEREOF, VIOLATE THE GEORGIA CONSTITUTION, EITHER GENERALLY OR BY VIRTUE OF AN AFFIRMATIVE ANSWER TO EITHER OF THE FOLLOWING SPECIFIC QUESTIONS:

    A)    DOES O.C.G.A. § 20-2-73 VIOLATE THE GEORGIA CONSTITUTIONAL DOCTRINE THAT EACH SCHOOL SYSTEM SHALL BE UNDER THE MANAGEMENT AND CONTROL OF A BOARD OF EDUCATION, THE MEMBERS OF WHICH SHALL BE ELECTED AS PROVIDED BY LAW?  OR

    B)    DOES THE POTENTIAL REMOVAL OF SCHOOL BOARD MEMBERS, AS PROVIDED FOR BY O.C.G.A. § 20-2-73, EXCEED THE GENERAL ASSEMBLY'S AUTHORITY TO ENACT GENERAL LAWS REGARDING LOCAL BOARDS OF EDUCATION UNDER ARTICLE VIII, SECTION V?

In certifying these questions, the Court does not intend the particular phrasing of the questions to limit the Georgia Supreme Court in its consideration of the problem posed by this case or in its analysis of the record certified in this case.

This latitude extends to the Georgia Supreme Court's restatement of the issues and the manner in which an answer is given. In order to assist the Georgia Supreme Court's consideration of this case, the entire record shall be transmitted to that Court.

**QUESTION CERTIFIED**, this 15th day of March, 2013.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE